**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Albert A. BENSABAT, III,**
**Defendant-Appellant.**

**No. 77–5010.**

United States Court of Appeals,
Fifth Circuit.

March 6, 1978.

Rehearing Denied March 30, 1978.

John R. Martzell, John W. Reed, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Ernest C. Chen, Albert J. Winters, Jr., Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before COLEMAN and FAY, Circuit Judges, and KING, District Judge.*

FAY, Circuit Judge:

On November 16, 1976, Albert Bensabat was convicted by a jury of conspiring to import cocaine, conspiring to possess cocaine with the intent to distribute, and possession of cocaine with the intent to distribute. Bensabat was subsequently sentenced to fifteen years in prison on each count with the sentences to run concurrently. The defendant raises several errors on appeal, but only one of these is worthy of comment.[1] Bensabat attempts to set forth a pattern of governmental misconduct and concealment of evidence which allegedly interfered with his right to present an effective defense and consequently denied him a

---

* James Lawrence King, District Judge for the Southern District of Florida, sitting by designation.

1. The defendant's assignments of errors regarding the hearsay statements of alleged coconspirators, and what constituted the "best evidence" with regards to certain taped conversations are totally frivolous and will not be discussed.

fair trial. Bensabat urges this Court to reverse his conviction through the exercise of its supervisory power over the conduct of criminal trials. We have carefully reviewed the conduct of the government in this case, and we find no error of such a dimension to warrant reversal.

The facts leading to the arrest of the defendant are not seriously contested. John Mayfield, who had previously been an informer for various federal and state law enforcement offices, was the mastermind of this cocaine importation scheme. Mayfield had an associate by the name of Brian Beranek. Mayfield determined that the best way to import cocaine would be to elicit the assistance of two New Orleans police officers. Mayfield was under the impression that officers Andrew Haab and Louis Dabdoub would, if adequately compensated, assist the smugglers in clearing customs at the airport, furnish Mayfield with whatever intelligence that had been gathered by various law enforcement authorities, and protect Mayfield from being "ripped-off." However, to Mayfield's ultimate chagrin, the two officers were working undercover throughout the entire period in question, and were reporting all actions to an agent of the Drug Enforcement Agency.

In March of 1976, Mayfield and Beranek hired Phil Duvic to be their courier, and they arranged for Duvic to go to South America and pick up a suitcase in which a quantity of cocaine had been concealed by Mayfield's South American sources. Mayfield advised Haab and Dabdoub of the trip so that they could station themselves at customs at the New Orleans airport to insure that no problems arose for Duvic upon his return. After insuring that Duvic got through customs, Haab and Dabdoub secured from Duvic the suitcase of cocaine and transported it to a motel room where they met Mayfield and Beranek. At the motel room, Mayfield, Beranek, Haab, and Dabdoub "cut" the cocaine with procaine (a drug resembling novocaine), and packaged this mixture in plastic bags. Mayfield then contacted the defendant and asked him to come to the motel if he wished to buy some cocaine. Bensabat came to the motel, acquired some of the cocaine, and departed. At this time, a decision was made to arrest Mayfield and Beranek. The defendant was arrested a short time later, and then, pursuant to a valid search warrant, a quantity of cocaine was seized from his home. Mayfield, Beranek, and Duvic pleaded guilty to the different charges and received varying sentences. Only Mr. Bensabat chose to go to trial.

The errors raised by the defendant are concerned exclusively with the government's conduct during trial. The testimony of the government's witnesses at trial indicated that during the planning stage of this conspiracy the defendant was known as the person who would ultimately purchase the cocaine. Bensabat complains that the government withheld from him evidence in their possession which indicated that early in the conspiracy Mayfield actually had another purchaser in mind. This fact was not revealed to the defendant until the fourth day at trial when the trial judge ordered the government to disclose some of the statements expunged from the *Jencks* material given to the defendant. This material indicated that at one time Mayfield anticipated that a sitting judge in the Parish of Orleans would purchase the cocaine.

■ The defendant argues several theories on why the withholding of this information denied him a fair trial. The government's explanation is rather simple—the government felt that it complied with the technical requirements of the Jencks Act, 18 U.S.C. § 3500, and that it would be inappropriate to subject a sitting judge to public ridicule when there was insufficient evidence to bring a criminal indictment against him. The defendant counters this by arguing that even though the *Jencks Act* was technically complied with, the materials which were given to him, and possibly other materials which were withheld from him, were exculpatory and should have been earlier disclosed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady*, the government

is obligated to give all exculpatory material to a defendant. A failure to disclose this is a denial of due process. We have reviewed each and every portion of the material which was given to the defendant, and also that material which was withheld from him, and we have determined that it is in no way exculpatory, and was, therefore, properly withheld. We are aware that the defendant is in an unusual position in that he has not seen some of this material which he argues should have disclosed. This material, however, was reviewed *in camera* by the trial court and by this Court, and this is the procedure that necessarily must be followed in this type of situation.

 The defendant argues that even if this material was not required to be disclosed under *Brady* and *Jencks*, the government should have disclosed it because once it was revealed it created a possible conflict of interest for the defendant's counsel. The conflict arose apparently because some three years earlier the defendant's counsel had successfully represented the state judge on state criminal charges. We refuse to accept this argument. There is no evidence that defendant's counsel presently represented this state judge or that he was so close to him that he could expect to be retained in any future litigation. The mere fact that an attorney at one time in the past represented a person whose name now arises on the periphery of a criminal investigation does not create a conflict of interest.[2]

The defendant has brought to our attention no conduct on the part of the government which denied him a fair trial. As a result, his conviction is affirmed.

**2.** The defendant also argues that the government directed its two chief witnesses, Mayfield and Beranek, to exclude from their testimony all references to the state judge. The government admits that it instructed the two witnesses not to "blurt out" the name of the state judge, but to mention it only if necessary to truthfully answer a question. No question was asked to the witness which absolutely required the mentioning of the judge's name. In any

event, the error would be harmless because after the defendant became aware of the judge's possible involvement, Mr. Mayfield and Mr. Beranek were made available to the defendant in the event that the defendant wished to further cross-examine them.