UNITED STATES of America, Plaintiff-Appellant,

v.

James Edward CURRIE, Defendant-Appellee.

No. 80–1835.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1981.

Decided Aug. 17, 1981.

As Modified Feb. 5, 1982.

Rehearing and Rehearing En Banc Denied Feb. 10, 1982.

**1252**

Richard B. Kendall, Asst. U.S. Atty., Los Angeles, Cal., argued for plaintiff-appellant; Robert L. Brosio, Asst. U.S. Atty., Los Angeles, Cal., on brief.

Alan Zarky, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellee.

Before NELSON and CANBY, Circuit Judges, and WILKINS,* District Judge.

PER CURIAM.

The United States, by information, charged the appellee with conversion of a stolen United States Treasury check having a value not in excess of $100.00. 18 U.S.C. § 641. Appellee was arraigned and the matter was set for trial before a United States Magistrate. Approximately one month before the date set for trial, an Assistant United States Attorney was assigned to prosecute the matter and discovery procedures began, but no plea bargaining took place. A week or so later, appellee's attorney notified the Assistant United States Attorney that his client intended to go to trial. Shortly thereafter the appellee's counsel was notified that the .United States intended to seek an indictment of appellee charging him with a felony under the same statute upon which the information had been predicated. Indictment would increase appellee's maximum possible sentence from one year to ten years. Appellee was given one week, however, in which to plead guilty to the misdemeanor charge in exchange for which the United States would abandon its intent to indict him. When appellee refused to so plead he was indicted, but at a pretrial hearing the trial judge dismissed the indictment as the product of vindictive prosecution. A superseding information has since been entered against appellee.[1] The United States appeals from the dismissal of the indictment.

In appealing the dismissal of the indictment the United States relies upon the recent United States Supreme Court case *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), arguing that this case stands for the "use of threatened reindictment as a bargaining chip in plea negotiations." Appellant's Opening Brief at 10. In support of its argument appellant points out the following factual congruencies between *Bordenkircher* and this case: (1) the prosecutors in both cases knew all the facts relied upon in seeking the indictment at the time the original, lesser charge was brought; (2) the same conduct was involved in both the lesser and the greater charges, and (3) the challenged indictment in both cases increased the defendants' sentence exposure.

Although we agree that these congruencies exist, there are also several distinguishing characteristics between *Bordenkircher* and this case.

First, the *Bordenkircher* Court noted that:

---

\* Honorable Philip C. Wilkins, Chief United States District Judge for the Eastern District of California, sitting by designation.

1. We note that the district court did not dismiss the indictment with prejudice or otherwise indicate that the dismissal should have that effect. Nor do we view the record in this case as requiring that remedy. Thus, our decision affirming the dismissal of the indictment does not prevent the prosecution from going forward pursuant to the superseding information, which restates the original misdemeanor charge.

[w]hile the prosecutor did not actually obtain the recidivist indictment until after the plea conferences had ended, his intention to do so was clearly expressed at the outset of plea negotiations. Hayes was thus fully informed of the true terms of the offer when he made his decision to plead not guilty.

434 U.S. at 360, 98 S.Ct. at 666. In the instant case there were no plea negotiations prior to appellee's interposition of his not guilty plea, nor during many months thereafter. Thus, appellee cannot be said to have been "fully informed of the true terms of the offer when he made his decision to plead not guilty," *id.* nor at the outset of any plea negotiations following reasonably thereafter.[2] In fact, no offer was made—rather the prosecutor presented a *fait accompli* after defendant elected to proceed to trial. Second, the Court also stressed that the *Bordenkircher* facts did not present "a situation . . . where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty." *Id.* There is no indication in the record that this appellee had any notice at all of the prosecutor's intent until *after* he had decided to stand trial on the misdemeanor charge and had communicated that intent to the prosecutor through his attorney. Finally, it was necessary for the United States to prove additional facts to support Hayes' conviction under the superseding indictment for habitual criminality than would have been necessary to convict him of the original charge of uttering. Conversely, the elements of proof as to the charges against appellee in this case would be identical whether he is charged with a misdemeanor or a felony violation of 18 U.S.C. § 641, the only distinction between the two charges being the value of the allegedly converted Treasury check.

In light of the foregoing discrepancies between the facts of *Bordenkircher* and those underlying this case, it is unnecessary to address appellant's theory any further, as plea bargaining played no part in the matter. The facts of this case bring it within the reasoning and holding of *United States v. Alvarado-Sandoval*, 557 F.2d 645 (9th Cir. 1977) and the trial court correctly so found. The decision is, therefore,

AFFIRMED.

---

2. We recognize that plea negotiations in some districts may routinely be initiated after arraignment because the defendant may be without counsel prior to that time. In the present case, however, the government's "raising of the ante" was not a mere invitation of plea bargaining after an arraignment and plea that, pursuant to local custom or practice, was understood to be an invitation to such bargaining. Rather, it was a response, without prior bargaining overtures, to the announcement of defendant's counsel that he was going to trial, made at a time when that decision was anything but preliminary.