# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-31136

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

ALBERT E. MOSLEY

Defendant–Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CR-00219

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Albert E. Mosley appeals his conviction for being a felon in possession of a firearm. At trial, Appellant's primary defense theory was that officers of the Baton Rouge Police Department ("BRPD") planted a gun in his apartment and fabricated the charge to punish him for running from them. To support this theory, Appellant sought to introduce evidence that officers also had punished him for running from them by beating him and by fabricating other

---

[*] Under Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

charges. The district court excluded evidence of the alleged beatings and the alleged fabricated charges as irrelevant on the ground that these events occurred after the crime of conviction was completed.

Appellant also sought to introduce the testimony of Assistant State Public Defender Scott Collier, who would have testified generally about why a defendant might plead guilty in state court to a crime he did not commit. The district court excluded this testimony as irrelevant.

The jury convicted Appellant. The district court applied a two-point sentence enhancement for perjury under United States Sentencing Guideline ("USSG") § 3C1.1.

On appeal, Appellant argues that the district court abused its discretion by excluding evidence of police brutality and fabricated charges, abused its discretion by excluding Collier's testimony, and committed clear error by giving him an obstruction of justice sentence enhancement for perjury. Appellant's arguments are not persuasive. Thus, we affirm Appellant's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Officer Brian Hunter, a patrol officer with the BRPD, was working at the duty desk when a man entered the station. The man explained that he lived in a nearby apartment complex, and that every time he walked past Apartment 55, three men standing outside threatened him. Officer Hunter and Officer James Roy drove to the apartment complex and walked toward Apartment 55. They saw three men outside the apartment. One, later identified as Appellant, was sitting. The others, later identified as David Young and Montreal Williams, were standing.

At this point, the officers' accounts differ from those of Appellant, Young, and Williams. At trial, Officers Hunter and Roy testified that when Appellant saw the officers, he jumped up, and a silver and black pistol fell from his

waistband. According to the officers, Appellant picked up the pistol and ran into Apartment 55 (later identified as Appellant's home for the last six months). Appellant, Young, and Williams testified that they had been drinking gin when the officers arrived. They testified that Appellant stood up when he saw the officers, the gin bottle fell to the ground, and Appellant went inside.

The officers testified that after Appellant ran into the apartment, Officer Roy stayed with Young and Williams while Officer Hunter called for backup and covered the rear of the building. As Officer Eisworth arrived to assist Officers Hunter and Roy, Appellant ran out the front door. Officer Eisworth chased Appellant. With help from Officers Jason Dohm and Paul Brown, Officer Eisworth arrested Appellant. At the time of his arrest, Appellant did not have a weapon on his person.

Appellant consented to a search of the apartment. Officers Hunter and Dohm searched the kitchen. Officer Hunter testified that the stove had been pushed out from the wall, and that he shone his flashlight behind the stove, where he found a silver and black pistol. Officer Dohm testified that he saw Officer Hunter reach behind the stove and pick up the pistol.

Appellant testified that when he said he did not have a gun one of the officers responded, "[I]t belongs to you now." Young testified that he overheard the officers saying they found the gun in a briefcase in the bedroom rather than behind the stove in the kitchen.

## B. State Proceedings

Appellant was charged in state court with possession of a firearm by a convicted felon. Appellant pled guilty to the lesser included misdemeanor charge of illegal carrying of a weapon. In conjunction with his plea, Appellant admitted under oath that he had been carrying a gun on the night of his arrest.

## C. Federal Trial

Despite his state court guilty plea, Appellant pled not guilty in federal court to being a felon in possession of a firearm. Before opening statements, the Government informed the district court that Appellant intended to call Collier. Collier had not been Appellant's counsel in the state prosecution but would testify generally about considerations in state prosecutions that might lead a defendant to plead guilty to a crime he did not commit. This testimony would include the advice public defenders give to defendants regarding guilty pleas to lesser charges, the heavy caseloads of public defenders, and public defenders' problems managing their cases. The Government objected, and the district court ruled that Collier's proposed testimony was not relevant.

The district court held a suppression hearing outside the presence of the jury to determine the voluntariness of a statement Appellant made after his arrest. At the hearing, Officer Eisworth testified that when he arrested Appellant, he struck Appellant's shoulder several times to loosen his arm enough to take him into custody, read Appellant his *Miranda* warnings, and walked him back to his patrol car. He testified that Appellant tried to run away, slipped, and fell against the car, shattering its window. He testified that Appellant showed no signs of physical injury after hitting the car and that Appellant said he did not need medical attention. Initially, the officers charged Appellant with criminal damage to property and resisting arrest, but later those charges were dropped.

Appellant testified that Officer Eisworth did not read him his *Miranda* warnings and that the officers kicked him in his face and head when they first arrested him. He also testified that Officer Eisworth smashed his head onto the car, and that he complained he was hurt and needed medical attention but was ignored.

Patricia Thomas, a resident of the apartment complex, testified that she lived upstairs from Appellant and was home on the night of the arrest. She testified that she saw one of the officers smash Appellant's head against the patrol car door several times. She said that she feared the officers would kill Appellant, and when she cried out, one of the officers told her to go back inside. She testified that Appellant was not resisting the officers in any way.

At the conclusion of the suppression hearing, the district court ruled that Appellant's statement was not admissible because Officer Eisworth skipped a portion of the *Miranda* warning.

Appellant's defense to the possession charge was that the gun in the apartment was not his and had been left by a previous resident, or in the alternative that the officers planted the gun and fabricated the charge to punish him for running from them. To support the latter theory, Appellant sought to introduce evidence that the officers also punished him by beating him, and that the officers also fabricated charges of criminal destruction of property and resisting arrest. Specifically, Appellant sought to introduce Thomas's and his own testimony about the beatings, to cross-examine Officer Hunter, and to call Officer Eisworth. The district court sustained the Government's objections to this evidence, ruling that it was not relevant because it dealt with events that occurred after Appellant's arrest-related conduct (namely, possession of a firearm).

After the close of trial, Appellant moved for a new trial, arguing that he had presented credible evidence of a set-up by the BRPD. The district court denied Appellant's motion, reasoning that the jury had heard two versions of the events on the night of the arrest and had rejected Appellant's version.

At sentencing, the district court increased Appellant's base offense level by two points for obstruction of justice because Appellant testified at trial that

he did not possess a gun, which contradicted Appellant's guilty plea in the state court proceeding, and which the district court found untruthful.

## II. JURISDICTION

This court has jurisdiction over the final judgment of the district court in this criminal case under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III. ANALYSIS

**A.     Whether the District Court Was within Its Discretion When It Excluded Evidence of Alleged Police Brutality That Occurred after the Crime of Conviction Was Completed**

Appellant argues that the district court violated his constitutional right to present a defense by excluding evidence of his alleged police beating and the allegedly fabricated charges of criminal destruction of property and resisting arrest. This court reviews a district court's determination of the admissibility of evidence for abuse of discretion. *United States v. West*, 22 F.3d 586, 591 (5th Cir. 1994).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor." This provision protects "[t]he right to offer the testimony of witnesses, and to compel their attendance . . . [and] the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right to offer testimony is not absolute. It permits a defendant "to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been *relevant* and material to the defense." *Id*. at 23 (emphasis added). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "All

relevant evidence is admissible, except as otherwise provided . . . . Evidence which is not relevant is not admissible." FED. R. EVID. 402.

The district court reasoned that because the alleged events happened after the crime of conviction, evidence related to these events was not relevant. The district court allowed Appellant to argue his defense theory to the jury and allowed Appellant to present some evidence in support. Appellant, Young, and Williams testified that Appellant dropped a gin bottle rather than a gun; Young testified that he heard an officer say that the gun was in a briefcase rather than behind the kitchen stove; and Appellant testified that an officer told him that the gun "belongs to you now."

The district court did not abuse its discretion by excluding testimony about the alleged beatings and alleged false charges. The tenuous connection between the proffered testimony and Appellant's defense theory, and the tenuousness of the defense theory itself, place the testimony within the district court's discretion. Officer Hunter, who found the gun, did not have any direct knowledge of the events that led to the charges of criminal destruction of property and resisting arrest. Likewise, Thomas's testimony would not have been helpful because she says she only saw one officer—Eisworth—beating Appellant. It is possible that Appellant's testimony could have sought to establish that Officer Dohm, who was present at the initial arrest and also at the search of the kitchen, both beat Appellant and planted the gun. But this is a thin reed on which to hang an argument.

Appellant seeks to circumvent these logical impediments by arguing that the officers acted as a "unified team" and should essentially be treated as a single entity. For us to accept this theory, we would have to believe several improbable prerequisites. For example, we would have to believe that all of the officers agreed beforehand to punish any suspect who ran from them by planting a gun and conducting a beating: it is unlikely that the officers would have had

an opportunity to reach such an agreement at the apartment complex, because Appellant ran out the door just as Officer Eisworth was arriving, and apparently before Officers Dohm and Brown even reached the scene. Further, we would have to believe that one of the officers kept an unlicensed, untraceable gun hidden on his person or in his patrol car, in case he wanted to plant it on a suspect.

Appellant cites several cases, but none of them supports his argument. *United States v. Viera*, 819 F.2d 498 (5th Cir. 1987), *United States v. Kimble*, 719 F.2d 1253 (5th Cir. 1983), and *Fountain v. United States*, 384 F.2d 624 (5th Cir. 1967) address the interplay between the competing constitutional rights of a defendant and a witness. In those cases, there was no question that the proposed cross-examination would elicit relevant testimony. In contrast, the instant case deals exclusively with relevance. Appellant also cites *United States v. Bensabat*, 568 F.2d 1226 (5th Cir. 1978). Appellant does not explain why he believes *Bensabat* is relevant, and after reviewing this case, we conclude that it is not.

## B. Whether the District Court Was within Its Discretion When It Excluded Collier's Testimony on the General Handling of Guilty Pleas in State Court

Appellant argues that the district court violated his Sixth Amendment rights by excluding Collier's testimony. At trial, Appellant argued that although he pled guilty in state court to illegal carrying of a weapon, he was actually innocent of that crime. Appellant wanted Collier to testify about why a defendant would plead guilty to a crime he did not commit. The district court excluded this evidence on the ground that general evidence of how criminal cases are handled in state court is not relevant in a separate federal trial. We review a district court's exclusion of evidence for abuse of discretion. *West*, 22 F.3d at 591.

Collier did not represent Appellant in state court, and Appellant did not intend to call Collier to testify about any personal interactions between Collier and Appellant. It appears that Appellant wanted Collier to help Appellant explain to the jury that Appellant pled guilty to ensure he would essentially get time served. It also appears that Appellant wanted Collier to explain that state deputy public defenders were overworked, had heavy caseloads, and could not adequately investigate or even remember every case, and thus could not provide every defendant with an adequate defense—so that a defendant might prefer to plead to a lesser charge rather than risk sub-par representation at trial.

There is no indication that the district court would have barred Appellant from presenting other evidence of this theory, including his own testimony and testimony from people who had direct experience with Appellant's case. But Collier would only have testified generally about state court criminal prosecutions, so the district court did not abuse its discretion by excluding his testimony.

## C. Whether the District Court Committed Clear Error When It Applied a Two-Point Enhancement for Obstruction of Justice

Appellant argues that the district court committed clear error when it increased his base offense level for obstruction of justice by two points under USSG § 3C1.1. A finding of obstruction of justice under USSG § 3C1.1 is a factual finding reviewed for clear error. *United States v. Mann*, 493 F.3d 484, 498 (5th Cir. 2007). A factual finding is not clearly erroneous if it is plausible in light of the complete record. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).

A court may increase a defendant's base offense level by two points if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing" of the crime of conviction. USSG § 3C1.1. "[T]he Constitution

permits a court to enhance a defendant's sentence under [USSG] § 3C1.1, if the court finds the defendant committed perjury at trial." *United States v. Dunnigan*, 507 U.S. 87, 88–89 (1993).

A witness testifying under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94; *see also* 18 U.S.C. § 1621 (federal perjury statute). To apply a sentence enhancement based on a defendant's trial testimony, a court must "'review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same.'" *United States v. Creech*, 408 F.3d 264, 270–71 (5th Cir. 2005) (quoting *Dunnigan*, 507 U.S. at 95). "[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Dunnigan*, 507 U.S. at 95. But "[t]he district court's determination that enhancement is required is sufficient . . . if . . . the court makes a finding of obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* In other words, a district court need not make an explicit finding of willfulness. *Id.*; *United States v. Morris*, 131 F.3d 1136, 1140 (5th Cir. 1997).

Appellant argues that the district court committed clear error because it failed to make a sufficient finding of willfulness. This argument is not persuasive. While it is true that the district court did not make an explicit finding of willfulness, an explicit finding is not necessary. *Dunnigan*, 507 U.S. at 95.

The district court's statements show that it made an implicit finding of willfulness. The district court observed that Appellant had a right not to testify, but because he chose to do so, he was "obligated to testify truthfully, and he did not." The district court noted that Appellant tried to convince the jury that his state court plea "was not valid because the facts that he admitted to in state

court were not true . . . and therefore, the jury . . . should not convict him," and that "[f]ortunately, the jury was smarter than that." The district court explained that Appellant "took the stand in this trial and said that he didn't have this gun, and that he had somehow—he had a gin bottle that he dropped on the concrete sidewalk, and it didn't break, but somehow the policemen took the gin bottle for a gun." The district court explained that "[t]hat statement alone . . . is sufficient to form the basis of the deduction for obstruction of justice in this trial." Thus, although the district court did not make an explicit finding of willfulness, it made an implicit finding based on its conclusion that Appellant lied under oath about having a gin bottle instead of a gun, and about his state court plea.

Appellant also argues that the district court committed clear error because Appellant, Young, and Williams all testified that Appellant was holding a gin bottle rather than a gun. But the fact that other witnesses gave the same story as Appellant does not mean the district court erred in concluding that Appellant committed perjury.

The district court did not commit clear error in applying an enhancement under USSG § 3C1.1.

## IV. CONCLUSION

Appellant argues that the district court abused its discretion by excluding evidence of police brutality and fabricated charges, abused its discretion by excluding Collier's testimony, and committed clear error by giving a sentence enhancement for perjury. Appellant's arguments are unpersuasive. We affirm Appellant's conviction.