UNITED STATES of America, Plaintiff-Appellee,

v.

George DEMCHAK, Jr., Defendant-Appellant.

No. 76–1940.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1977.

**1030**

P. D. Aiken, Fort Lauderdale, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The jury convicted the defendant, George Demchak, Jr., on two counts charging violations of federal drug laws. At the trial Demchak's father testified briefly against him. The court limited cross-examination, and then subsequently struck the father's adverse testimony and instructed the jury not to consider it. Because this instruction called for mental discipline beyond what might reasonably be expected of a jury, we reverse for a new trial.

The Government indicted the defendant, his father (George David Demchak Sr.), and two others on five counts: one conspiracy count to possess with intent to distribute cocaine and phencyclidine (PCP); two counts of PCP possession; and two counts of PCP distribution. 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2. The co-indictees each pled guilty. The defendant, after a period as a fugitive, elected to stand trial.

At trial, as the second witness to offer direct testimony against the defendant, the Government called his father. The difficulty with the attempted but limited cross-examination of the father that led to the eventual striking of his testimony resulted from his having pled guilty to the PCP conspiracy but not to the cocaine conspiracy or substantive counts. The court ruled that he had waived his rights with respect to the conspiracy count as to PCP, but would not allow questions about cocaine, about possession or distribution of PCP, or about events before the time framed by the indictment.

In direct testimony Demchak Sr. tied the defendant to the conspiracy. He said that in April 1975 he received a telephone call in which his son offered to sell him a pound of PCP for $5,000. He also told of a telephone call in May 1975 in which he had told his son the money was not yet available, and the son had expressed regret.

The transcript portrays rather confused exchanges of counsel and the court, in which the court announced that cross-examination was limited to the scope of the direct examination. The defendant was allowed to elicit the impeaching information that Demchak Sr. was a resident of the federal penitentiary but was not allowed to inquire into communications between father and son concerning PCP prior to the time framed by the indictment, or to ask about cocaine, or to elicit information concerning the distribution or possession of the PCP.

At the conclusion of Demchak Sr.'s testimony, the defendant moved for mistrial on the ground his rights to cross-examination and confrontation of witnesses had been unduly infringed, and in the alternative moved to strike the testimony. The court, without explanation in the record, denied

the motion for mistrial but granted a motion to strike Demchak Sr.'s testimony.

The jury convicted the defendant of conspiracy and one count of possession of 53.6 grams of PCP.

We concur in the defendant's argument that once Demchak Sr.'s testimony against his son was heard by the jury, it was impossible to erase the prejudicial effect by striking it from the evidence and instructing the jury to disregard it. Demchak Sr. was no ordinary witness. He was the defendant's father. The jury could well presume that no father would swear a lie against his son. Much of the Government's case was designed to bolster the veracity of the witness. The prosecution's final witness, a Government agent, even produced a napkin on which Demchak Sr. had recorded the details of an illicit transaction.

■ The testimony of Demchak Sr. provided direct evidence of criminal activity by the defendant. From the telephone conversation he described, the jury could infer that Demchak Jr. possessed PCP, intended to distribute it, and was conspiring with his father to do so. In addition to the strong emotional impact of a father incriminating his son, the only other direct evidence against the defendant was the testimony of a witness closely associated with the father, who testified in great detail as to dealings between father and son. In assessing the significance of error, important considerations include the rights at stake, the prejudicial effect of the testimony, and the weight of the evidence pointing to a conviction. *See United States v. Arenas-Granada,* 487 F.2d 858 (5th Cir. 1973); *Odom v. United States,* 377 F.2d 853 (5th Cir. 1967). Judged by this standard the defendant is entitled to a new trial. He has a right to be judged by only admissible evidence. The prejudicial effect of the erroneously admitted testimony could hardly be greater. The only other direct evidence pointing to conviction came from one witness who had been a secretary romantically involved with the father. A substantial amount of her testimony about dealings between the father and son was outside the scope of the

indictment, and consequently was struck from the record by the court with an instruction to the jury not to consider it. What remained was not of sufficient weight to carry the case, regardless of error.

■ The Government argues that even though the defendant might be entitled to a reversal if the motion to strike were properly granted, we should affirm because the testimony of the father should not have been stricken. We are not inclined to second-guess the trial court on that judgment. There is little question that the scope of cross-examination was limited more narrowly than contemplated by the Federal Rules of Evidence, Rule 611(b). A court has a duty to protect the Fifth Amendment rights of witnesses. *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). In some circumstances it may do so by limiting the scope of cross-examination to matters as to which the witness has waived his privilege by testifying on direct. *Fountain v. United States,* 384 F.2d 624 (5th Cir. 1967), *cert. denied sub nom. Marshall v. United States,* 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); *United States v. Gould,* 536 F.2d 216 (8th Cir. 1976). Involved with these principles is the prohibition against the Government's putting an accomplice on the stand and eliciting information which cannot be adequately cross-examined because of a Fifth Amendment privilege. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

On balance, we agree with the district court that the testimony of Demchak Sr. was inadmissible because it could not be properly cross-examined. The testimony about the conspiracy inevitably carried with it inferences concerning the substantive possession count for which the defendant was also convicted. Demchak Jr. was denied the opportunity to explore these inferences. Jencks Act material given to defendant consisted of recorded conversations of Demchak Sr. with Government agents. These discussions intertwined dealings in cocaine and PCP, and all questions concern-

ing cocaine were held not to be within the scope of the direct testimony. Thus the Jencks Act material was of virtually no use for cross-examination purposes. Finally, Demchak Jr. was not allowed to inquire into prior dealings between father and son which might have exposed bias or otherwise have impeached the witness.

This case is unlike *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976), upon which the Government relies. In *Gould*, the witness testified in detail and was subjected to probing cross-examination as to the smuggling incident which gave rise to the prosecution and to which the witness had pled guilty. The witness had previously engaged in a similar venture in which the defendants had played no role. The court prohibited questions as to this prior, unrelated activity in view of the witness's undeniable right to take the Fifth Amendment as to that incident. But in Demchak's case, the court prohibited questions concerning the very activity about which the father and son had allegedly conspired.

The sufficiency of cross-examination depends on the circumstances of each case and this record reveals that Demchak Jr. was unable to test the strength of his father's testimony against him. It should be remembered that this dilemma was created by the Government which accepted the guilty plea to the PCP conspiracy only, and did not dismiss the remaining counts until twenty days after the father's testimony. Struggling with this situation, the court undoubtedly correctly decided that Demchak Sr.'s testimony should not have been admitted. Following that decision, however, a mistrial should have been granted.

In situations such as this, *in camera* hearings can often avoid the waste of judicial resources attendant on mistrial. The defense requested without success an *in camera* hearing to demonstrate the degree to which its cross-examination would be impaired. Such hearings are well-established techniques for avoiding prejudicial error in

adjudicating conflict between Fifth and Sixth Amendment rights.

REVERSED AND REMANDED.