UNITED STATES of America,
Plaintiff-Appellee,

v.

Clayton KIMBLE, a/k/a "Sap", and Jules
Ron Kimbel, Defendants-Appellants.

No. 82–3528.

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1983.

Certiorari Denied Jan. 16, 1983.
See 104 S.Ct. 984.

Jack M. Dampf, Baton Rouge (Court appointed), for Clayton Kimble.

Lawrence B. Shallcross, Jr., Baton Rouge, La. (Court appointed), for Jules Kimble.

Ian F. Hipwell, E. Barton Conradi, Asst. U.S. Attys., Baton Rouge, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Clayton Kimble and Jules Ron Kimbel, brothers who spell their name differently, were indicted along with three others in a four-count indictment arising out of illegal activities in Texas, Louisiana and Mississippi prior to and during 1976. Following a 24-day trial, the jury found appellants guilty of conspiracy to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(d), and conspiracy to violate the civil rights of Russell Griffith by murdering him, 18 U.S.C. § 241.[1] Sentenced to life imprisonment, the brothers appeal, assigning error in pretrial proceedings and at trial. Finding no reversible error, we affirm.

### Facts

James Shelton Leslie, a Shreveport advertising executive, was shotgunned to death on the parking lot of the Prince Murat Hotel, Baton Rouge, Louisiana, in the early morning hours of July 8, 1976, following a party celebrating passage of a Right-to-Work bill by the Louisiana Legislature.

---

1. Appellants were found not guilty of the substantive charges of conducting and participating in the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c), and of obstruction of justice by threatening and killing Griffith, 18 U.S.C. § 1503. Two of the co-defendants were found not guilty on all counts and the jury was unable to reach a verdict as to the other.

Three months later, during the evening hours of October 15, 1976, Russell Griffith was shotgunned to death in the Three Rivers Wildlife Management Area in Concordia Parish, Louisiana. Three weeks prior to his death, Griffith and Jules Ron Kimbel were indicted in the Southern District of Mississippi for the interstate transportation of a stolen bulldozer. The Leslie and Griffith murders went unsolved for five years although a massive investigation was undertaken by various state authorities.

On June 8, 1981, a major development occurred. On that day, Steve Thomas Simoneaux pleaded guilty to conspiracy to violate the civil rights of Griffith by murdering him, 18 U.S.C. § 241. Under a Fed. R.Crim.P. 11(e)(1)(c) plea, Simoneaux agreed to cooperate with the federal authorities and to testify before grand and petit juries. Conditioned on the acceptance of the adequacy of his cooperation, Simoneaux was to be sentenced to 20 years imprisonment, to run concurrently with sentences in Texas for armed robbery, and federal authorities agreed not to furnish information on state crimes to state authorities. Simoneaux was given immunity from testimony-related federal offenses but no immunity from state law infractions.

Simoneaux testified before the grand jury which handed up the four-count indictment presently before the court. The government's theory of the case was that a racketeering enterprise for the theft and interstate transportation of heavy equipment existed among and between the co-indictees, Simoneaux, and others. Under the prosecutor's scenario, several of the conspirators sought to curry the favor of the late George W. D'Artois, Commissioner of Public Safety of Shreveport, Louisiana, by murdering Leslie. Leslie had appeared before a state grand jury which indicted D'Artois for misuse of public funds and was to testify for the prosecution at D'Artois's trial. In addition, the prosecution maintained that when Griffith and Jules Ron Kimbel were arrested for the interstate transportation of the bulldozer, a decision was made to eliminate Griffith before he could "cut a deal" with federal authorities and tell them about

the heavy equipment ring and Leslie's murder. The jury was not convinced of the case involving the murder of Leslie, but returned a special verdict implicating appellants in the interstate heavy equipment ring and in Griffith's murder.

The government's case was based largely on the testimony of Simoneaux who testified, *inter alia*, concerning the illegal heavy equipment operation, the involvement with D'Artois and the death of Griffith. Simoneaux was subjected to rigorous cross-examination, including extensive questioning about the precise nature of his plea arrangement, his personal background, and his crime-studded record. Simoneaux acknowledged that he was dishonorable and that he had repeatedly lied, including lies under oath, to save his own skin. He admitted to intimate participation in the criminal activity set forth in the indictment and candidly stated that he was testifying only because of the lenient sentence he was to receive in return for his cooperation. In particular he spoke of the contingent nature of his sentence, which had not yet been imposed, and that he fully understood his cooperation would have to be deemed acceptable before the plea agreement would be operative.

At several points during the course of the trial, the district judge instructed the jury that the testimony of an alleged co-conspirator was to be considered with great caution and that the jury was to weigh the testimony of Simoneaux in light of all circumstances, including the plea arrangement. The court underscored that it was for the jury to determine Simoneaux's credibility.

The trial judge imposed one limitation on the scope of cross-examination. Defense counsel were restrained from questioning Simoneaux about the specifics of prior, unrelated state crimes for which Simoneaux had no immunity, and as to which he was entitled to assert the fifth amendment privilege against self-incrimination.

During the course of cross-examination of Simoneaux, counsel for one of the other

co-defendants attempted to impeach him by reading a portion of a transcript of a prior inconsistent statement. The prosecutor asked the judge to direct counsel to read the entirety of the statement to put it in context. Upon the judge's order, counsel began to read three sentences which contained references to prior criminal behavior of Clayton Kimble.[2] Counsel objected during the reading and after an immediate bench conference, at which the court and counsel agreed that the final part of the statement should not have been admitted in evidence, the court instructed the jury to disregard the statement.

Appellants assign various errors: the evidence was insufficient to sustain their convictions, hearsay statements by co-conspirators were erroneously admitted in evidence, the court erroneously limited cross-examination of Simoneaux, and the reading of the sentences referring to prior crimes of Clayton Kimble was prejudicial. Appellants further maintain that the trial court erred in denying motions for severance and in relieving the government from responding to Clayton Kimble's unsolicited offer of an alibi list. Appellants further complain that the government interfered with their trial preparation by furnishing voluminous Jencks Act materials two weeks before trial. We find no reversible error in any assignment of error.

### Sufficiency of the Evidence

■ To properly convict, the government must prove every element of each offense charged beyond a reasonable doubt. To convict defendants of conspiracy to violate RICO, "the government must prove that [defendants] objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes." *United*

States v. Martino, 648 F.2d 367, 394 (5th Cir.1981) (citing United States v. Bright, 630 F.2d 804 (5th Cir.1980), and United States v. Elliott, 571 F.2d 880 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978)). There must be proof of an illegal conspiracy, defendants' knowing participation and an overt act in furtherance. *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981). To convict defendants of conspiracy to violate Russell Griffith's civil rights, contrary to 18 U.S.C. § 241, the government must prove that defendants knowingly joined a conspiracy to injure, oppress, threaten or intimidate Griffith, with the intent to deprive him of his right to testify,[3] and that an overt act was committed in furtherance of the conspiracy.

When the sufficiency of the evidence is challenged on appeal, the standard of review directs inquiry whether "there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir.) (en banc), cert. denied, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979) (quoting Burks v. United States, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)). Viewing the evidence in this record under that standard, it is readily apparent that the jury had before it evidence which, if deemed credible, fully supported its verdict. It is exclusively the function of the jury to assess credibility. We are particularly loath to reject a jury's verdict when it is so manifestly dependent on credibility assessments.

■ Appellants argue that Simoneaux's testimony was *per se* incredible because of the plea arrangement, and in any event it was so incredible that it should have been excluded. We are not persuaded. Simoneaux admitted that he perjured himself,

---

2. The challenged statement was:
 The bulldozing thing out of Jackson, Mississippi. Clay was already in federal trouble, so this would have knocked his probation. He was on probation, so he would have to get three years automatically, because if he was revoked, plus whatever time he would—.

3. The right to testify "arises out of the creation and establishment by the Constitution itself of a national government, paramount and supreme within its sphere of action." *In re Quarles*, 158 U.S. 532, 536, 15 S.Ct. 959, 961, 39 L.Ed. 1080 (1895); *United States v. Thevis*, 665 F.2d 616 (5th Cir.1982).

he admitted lying in over 30 different statements motivated by his sense of self-preservation. He was cross-examined at length and confronted with the prior inconsistent statements and offered his explanation. The jury had both the power and duty to determine whether Simoneaux was to be believed in whole or in part. The jury obviously believed him, at least to the extent that it returned the guilty verdicts on two counts. The plea agreement, prior statements and prior criminal record all went to the weight of Simoneaux's testimony, not its admissibility.

### Hearsay of Co-conspirators

■ Appellants argue that hearsay of co-conspirators was erroneously admitted. Under the rule we announced in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), a statement which would otherwise be excludable as hearsay is admissible if there is substantial independent evidence of the conspiracy between the declarant and the defendant, and the proffered statement was made in furtherance of that conspiracy. The district court must make these findings at some time during trial, preferably before introduction of the statement. However, the court may allow introduction of the challenged declaration, subject to subsequent establishment of an adequate foundation. In this case, the court made the requisite *James* findings before submission of the case to the jury. In any event we find this assignment without merit; appellants fail to point to any specific inadmissible statement. *See United States v. Salinas*, 654 F.2d 319 (5th Cir.1981).

### Limitation on Cross-Examination

■ Appellants maintain that the court erred in restraining defense counsel from asking Simoneaux specific questions about prior, unrelated state crimes, claiming that this ruling impermissibly infringed their sixth amendment right to the confrontation of witnesses. We do not agree.

■ When a witness legitimately invokes his fifth amendment privilege, creating a potential conflict with a defendant's sixth amendment right to confrontation, the relevant question on review is "whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." *Fountain v. United States*, 384 F.2d 624, 628 (5th Cir.1967). In the instant case the court's limitation on cross-examination created *no danger of prejudice*. Appellants and their co-defendants were able to point out to the jury that Simoneaux was a persistent perjurer who had lied to the grand jury in this very case, that he was testifying pursuant to a plea agreement which was contingent upon satisfaction with his cooperation, that he had committed various state law crimes in Louisiana and the federal authorities had agreed, as part of the plea agreement, not to pass along to Louisiana authorities any evidence of those state crimes. Thus, appellants had ample opportunity to test the truth of Simoneaux's testimony by challenging his credibility, notwithstanding the court's minor limitation on the scope of cross examination. *See United States v. Brown*, 634 F.2d 819 (5th Cir.1981).

### Extrinsic Offense Evidence

■ Clayton Kimble urges reversible error because of the reading of the concluding portion of a statement by Simoneaux which made reference to prior offenses. It is apparent, as quickly recognized by the court and counsel, that the evidence was inconsistent with Fed.R.Evid. 404(b). *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978). However, the trial court's prompt instruction to the jury to disregard the testimony was sufficient to cure the error. The references to the prior offenses would be reversible "only if there is a significant possibility that they had a substantial impact on the jury's verdict." *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir.1977). Here, the statement was somewhat ambiguous, did not mention a crime, a conviction, or appellant's last name, and consisted of only three short sentences, the reading of the third of which was interrupted, occupying only moments in a 24-day trial. We are

satisfied that the error inherent was mitigated and rendered harmless by the trial judge's prompt curative instruction.

### Assignments of Pretrial Error

 The remainder of appellants' challenges relate to pretrial rulings and actions. The district court denied a severance. Joinder of defendants was proper under Fed.R.Crim.P. 8. Therefore, "defendants must rely on Rule 14, Fed.R.Crim.P., which permits severance if a defendant is prejudiced by the joinder." *United States v. Martino,* 648 F.2d at 385. The defendant's "burden of showing prejudice is onerous." *Id.* Severance is only mandated when a fair trial may not be accorded the joined defendants. A motion to sever is directed to the sound discretion of the trial judge. The refusal here was within the scope of that discretion.

Finally, we find no merit in Clayton Kimble's complaint relative to the court relieving the government from responding to his unsolicited offer of an alibi list and to appellants' complaint that the prosecution interfered with trial preparation by producing a large volume of Jencks Act material two weeks in advance of trial, purportedly inundating them. Neither issue warrants further discussion.

AFFIRMED.