**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony VIERA, Defendant-Appellant.**

**No. 86–2161.**

United States Court of Appeals,
Fifth Circuit.

June 3, 1987.

Paul Nugent, Mike DeGeurin, Houston, Tex., for defendant-appellant.

James C. Sabalos, Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, WILLIAMS and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant Anthony Viera appeals his conviction for violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2, for conspiring to distribute cocaine, and for aiding and abetting Ernest King, Jr., in completing the underlying substantive offense. Appellant claims that he was denied a fair trial because (1) the district court restricted his opportunity to cross-examine and impeach King, the government's key witness against him, (2) the prosecutor failed to expose King's inconsistent statements to the jury, and (3) the prosecutor threatened appellant's father and thereby prevented his testimony and subsequently commented before the jury on the father's failure to testify. We find no flaw in the district court's handling of the difficult matter of King's cross-examination, or in the prosecutor's silence regarding King's statements. By contrast, the prosecutor's threat concerning the father's testimony coupled with his comments to the jury on the father's failure to testify violated appellant's right to present witnesses in his defense. Consequently, we reverse appellant's conviction.

I.

In August, 1985, Ernest King, Jr., became the target of a Drug Enforcement Administration (DEA) investigation into the smuggling of cocaine into the United States. On August 13, DEA undercover agents set up a sting operation which led to King meeting with and agreeing to sell the agents one pound of cocaine. King was seen making several phone calls, and he later testified that the calls were placed to appellant, who was his supplier. An hour later, at King's residence, the agents observed appellant Viera arrive in a blue pickup, driven by appellant's father, Gaspar Viera. Appellant entered King's home, appearing to carry nothing. King testified at trial that appellant was carrying cocaine stuffed into his shorts. Half an hour later, King and appellant left the home in King's truck and drove to a parking lot where King had agreed to make the sale to the DEA undercover agents. Appellant remained in the truck while King "sold" nine ounces of cocaine to the agents. King and appellant were both arrested.

Meanwhile, agents keeping King's residence under surveillance noticed that Gaspar Viera remained in the area of King's home after dropping off his son. When the blue pickup approached the King residence a third time after appellant had left, DEA agents stopped the car and searched it, seizing a "beeper" belonging to appellant. King later told the prosecuting attorney that Gaspar Viera knew about and/or was involved in several drug deals, including the one for which King and appellant were convicted.

After he was arrested, appellant denied any knowledge of the cocaine, telling DEA agents that he was just along for the ride. King likewise at that time told the agents that appellant was just along for the ride, and that the cocaine King had "sold" had been at his residence before appellant arrived.

King and appellant were both charged with conspiracy to possess cocaine with intent to distribute and with distributing cocaine. King pleaded guilty, and agreed to testify against appellant as a condition of his plea bargain. King's sentencing was scheduled to occur after he completed testifying at appellant's trial.

Between the time he was arrested along with appellant and the time he testified for the government at appellant's trial, King was arrested on two separate occasions for delivering cocaine to undercover agents. Because King faced state prosecution for these actions, the trial court in the presence of the jury limited cross-examination by appellant's counsel so as not to violate King's Fifth Amendment rights. Appellant objected to the limitation on cross examination.

At the trial, King was the key government witness. He testified that appellant had been his supplier for fifteen or twenty drug transactions and that appellant had brought the cocaine to sell to the DEA agents in this case. King thus contradicted his earlier statements that appellant had been involved in only three or four previous transactions with him, and that in this case appellant "was just along for the ride." Appellant objected to the prosecutor's failure to expose this inconsistency at trial.

At the beginning of the trial, appellant's father, Gaspar Viera, was sworn in as a defense witness. In the presence of King's attorneys, Marjorie Meyers and Candelerio Elizondo, the prosecutor disclosed that King had implicated Gaspar Viera, appellant's father, in several drug transactions. Therefore, asserted the prosecutor, should the elder Viera choose to testify, he would likely be forced either to incriminate himself by admitting involvement in these crimes or to commit perjury by denying his involvement. Either way, the prosecutor said he would seek an indictment of Gaspar Viera before a grand jury convening the next week.

King's attorneys communicated this threat to appellant's attorney, who subsequently decided not to call Gaspar Viera to testify. Appellant's attorney objected to the trial court about the prosecutor's statements, and moved for a mistrial. The court denied the motion for mistrial, but noted that "[i]t certainly was in poor taste and it was improper to make such statements, counsel for the Government, and I don't ever want it to happen again ..." Yet in this course of his closing argument, the prosecutor compounded his action by commenting: "We never heard from dad, did we?" Appellant objected to the reference to Gaspar Viera, but the district court overruled the objection.

The jury found appellant guilty of conspiracy to possess cocaine with intent to distribute and for aiding and abetting King in the commission of the underlying substantive offense. He was sentenced to nine year imprisonment.

## II.

▮ Appellant argues that the trial court denied him a fair trial by improperly restricting his ability to cross-examine the government's key witness. Control over the conduct of a trial, including the scope of permissible cross-examination, is squarely within the discretionary powers of the district court, and its rulings will be disturbed on review only if the district court abuses that discretion.

The government's key witness, King, was under indictment in state court for two extraneous drug offenses. His attorneys were present at appellant's trial in order to advise King with regard to his right against self-incrimination. There is no doubt that, with respect to cross-examination relating to those offenses, King had a constitutional right to refuse to answer. *Cf. United States v. Kirk*, 528 F.2d 1057, 1061 (5th Cir.1976).

The trial court was forced then to balance the witness' Fifth Amendment rights against appellant's Sixth Amendment right to confront the evidence against him. The procedure followed by the trial court was exactly the procedure we suggested in *United States v. Demchak,* 545 F.2d 1029, 1032 (5th Cir.1977): the judge excused the jury, and heard the desired cross-examination by appellant's counsel. When it transpired that all the questions on cross-examination were covered by the witness' privilege, the judge chose not to allow the cross examination, thereby avoiding the necessity of instructing the jury to ignore the questions and not to infer anything from the witness' failure to answer them. *Cf. United States v. Sircovich,* 555 F.2d 1301, 1302 (5th Cir.1977) ("Of course, a jury is not allowed to draw any inferences, for or against either the prosecution or the defense, from the decision of a witness to invoke the Fifth Amendment privilege.").

Appellant does not dispute the invocation of the Fifth Amendment right by the government's witness so much as he objects to the fact that the witness was nevertheless allowed to testify for the prosecution. Appellant cites *Demchak, supra,* for the proposition that the district court ignored "the prohibition against the Government's putting an accomplice on the stand and eliciting information which cannot be adequately cross-examined because of a Fifth Amendment privilege." 545 F.2d at 1031. By doing so, the appellant claims, the district court acted outside its discretionary authority which "comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment." *United States v. Garza,* 754 F.2d 1202, 1206 (5th Cir.1985), *quoting United States v. Mayer,* 556 F.2d 245, 250 (5th Cir.1977).

We reject appellant's contention. "The test of whether the trial court abused its discretion in refusing to allow cross-examination for impeaching a witness is 'whether the jury had sufficient information to ap-

praise the bias and motives of the witness.'" *United States v. Ray,* 731 F.2d 1361, 1364–65 (9th Cir.1984), *quoting Skinner v. Cardwell,* 564 F.2d 1381, 1389 (9th Cir.1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). *See also United States v. Kimble,* 719 F.2d 1253, 1257 (5th Cir.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984), *quoting Fountain v. United States,* 384 F.2d 624, 628 (5th Cir.1967) ("[T]he relevant question on review is 'whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness' direct testimony.'").

In this case, appellant was able to disclose to the jury by various means all the information he had wanted to present through cross-examination of King.[1] King's inconsistent statements (that Viera was "not involved, just along for the ride," and that he was involved as the cocaine supplier) were brought out in the examination of other witnesses. Further, both the prosecution and appellant's attorney referred to the statements in their closing arguments. Certainly the jury was informed as to these inconsistencies, and was therefore able to gauge their effect on King's credibility.

Evidence of both of King's extraneous offenses was presented to the jury by police officer May, who also testified that he was investigating King's connection with a multi-state drug network. We have acknowledged in similar circumstances the right of the trial court to limit cross-examination when the desired testimony had been presented by other witnesses. *See, e.g., United States v. Balliviero,* 708 F.2d 934 (5th Cir.) (holding that cross-examination by defendant was not unduly restricted when defendant had adequate opportunity to expose the same facts to the jury), *cert. denied,* 464 U.S. 939, 104 S.Ct. 351, 78 L.Ed.2d 316 (1983). Finally, appellant's counsel was permitted extensive cross-ex-

---

1. This circumstance distinguishes this case from *United States v. Demchak, supra,* upon which appellant relies. In *Demchak,* the court's restriction on cross-examination of a witness for

the prosecution effectively prevented the jury from ever evaluating the strength and veracity of that witness's testimony.

amination of King concerning both his plea bargain and his agreement that he would testify against appellant before being sentenced. Thus, King's potential bias and the reasons to doubt his credibility were effectively communicated to the jury. The trial court did not abuse its discretion in limiting appellant's cross-examination of King.

### III.

Appellant's second point of appeal concerns testimony by King that appellant had sold him drugs fifteen or twenty times. Appellant complains that the prosecuting attorney should have intervened when King gave this testimony on the basis that it was false, since prior to trial King claimed that he previously dealt with appellant only three or four times. Appellant also claims that such testimony was inadmissible under the rule set out in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). He asserts that extrinsic offense evidence is admissible under Rule 404(b) if it is relevant to an issue other than character, and if its probative value outweighs its prejudicial harm.

■ Contrary to appellant's argument, we find that the prosecuting attorney had no duty to intervene and contradict his witness' statements because there was no reason to believe that the witness was lying. Appellant's counsel was certainly free to investigate the inconsistencies between King's pre-trial and his in-trial testimony. Absent a belief that his witness was perjuring himself, however, the prosecution was not obliged to make the defense counsel's credibility arguments for him. As for the admissibility of the testimony, the statements clearly bore on issues other than appellant's character. They were relevant, for example, to the issues of motive, opportunity, intent, and plan, and therefore were admissible under Rule 404(b). Appellant's second point of appeal is rejected.

### IV.

Finally, appellant argues that the prosecutor acted improperly (1) in threatening a defense witness to prevent him from testifying and (2) in mentioning that witness' failure to testify in closing argument. Because we agree that the prosecuting attorney impermissibly infringed on appellant's right to present witnesses on his behalf, and because no immediate curative instruction was issued by the trial court following the prosecutor's improper comments, we reverse appellant's conviction.

We turn first to the prosecutor's alleged threats to appellant's father. He had been sworn in at the beginning of the trial as a witness for the defense. After appellant had been convicted and sentenced, King's attorneys swore out affidavits in which they stated that early in the trial the prosecutor had threatened Gaspar Viera with indictment if he took the stand in his son's defense. King's attorney had told appellant's lawyer about the threats. Because of the threats, appellant and his lawyer decided not to call Gaspar Viera to the stand.

The prosecutor, an Assistant United States Attorney, has submitted an affidavit to this Court in which he denies making any improper threat. He acknowledges, however, advising appellant's attorney that, if the father took the stand and either perjured himself or provided self-incriminating evidence, the prosecutor would present the matter to a grand jury convening the next week. The prosecutor asserts that these statements were communicated not as a threat, but in good faith.

We begin with the cardinal proposition that "[t]he constitutional right of a criminal defendant to call witnesses in his defense mandates that they be free to testify without fear of governmental retaliation." *United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir.1982). *See also United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir.1980) ("Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant.").

The prosecutor does not disagree with this principle, nor does he deny that he

issued warnings to appellant's father concerning his potential indictment after testifying. Our task, then, is to evaluate the extent to which those warnings constituted improper threats. In *Blackwell, supra,* the D.C. Circuit noted that

> [i]t is not improper *per se* for a trial court judge or prosecuting attorney to advise prospective witnesses of the penalties for testifying falsely. *See, e.g., United States v. Simmons,* 670 F.2d 365 (D.C.Cir.1982) (per curiam). But warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify. *See Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).

694 F.2d at 1334. In *Webb v. Texas, supra,* the Supreme Court found that a district judge's "threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand." 409 U.S. at 98, 93 S.Ct. at 353. The language employed by the judge included the following admonishment: "If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury ..." 409 U.S. at 96, 93 S.Ct. at 352.

■ The "good faith warning" issued by the Assistant United States Attorney in this case has a striking similarity to the statement assailed by the Supreme Court in *Webb.*[2] The prosecutor admits that he advised defense counsel, "if the father was called as a witness and provided incriminating evidence against himself, or perjury [sic], that I would take the matter to the next setting [sic] Grand Jury, the following week, and present the matter to them for their consideration and that he could be indicted." It should be emphasized that this is the prosecutor's version of what he said. Others who heard him asserted that he made the statement that if appellant's father testified he would either have to claim the privilege against self-incrimination or he would be indicted for perjury the next week. Even accepting the prosecutor's version, he was not merely reminding Gaspar Viera of his oath to "tell the whole truth, and nothing but the truth." He was assuring Mr. Viera that he would personally see to it that Mr. Viera faced indictment for any potential mishaps on the stand.

■ Appellee argues that even if his comments were improper, appellant is not entitled to reversal unless he demonstrates prejudice, citing *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). In *Valenzuela-Bernal,* the Supreme Court required a showing of prejudice where the government had legally deported an alien witness, thereby depriving the defendant of that witness' testimony at trial. The distinction between *Valenzuela-Bernal* and this case is a critical one: in the former case, the government action resulting in the loss of a witness was completely proper; in the latter case, the action was improper and egregious. More to the point, the facts of this case are on all fours with *Webb v. Texas, supra,* in which the Supreme Court reversed a defendant's conviction without regard to prejudice. 409 U.S. at 98, 93 S.Ct. at 353–54.[3] *Cf. Webb v. Texas, supra,* 409 U.S. at 98–99, 93 S.Ct. at 354 (Blackmun, J., dissenting) (arguing that the court should

---

**2.** Because we find a violation of appellant's rights based on the statements that the prosecutor, in his affidavit to this Court, freely admits to making, we see no cause to remand this case to the district court for a resolution of the varying accounts of what occurred.

**3.** The dissent takes issue with our comparison of the facts of this case with those of *Webb.* Specifically, the dissent notes that in this case, the prosecutor made no personal guarantees on indictment or conviction. We note in response that the prosecutor in this case was actually capable of carrying out his threat since he exercises the discretion to present the indictment.

In *Webb,* by contrast, as the Supreme Court noted, "[a]t least some of these threats may have been beyond the power of this judge to carry out." 409 U.S. at 97–98, 93 S.Ct. at 353.

The dissent finds relevant distinction in the fact that the prosecutor's remarks were made to defense counsel and outside the courtroom, whereas in *Webb* the judge's remarks were made to the witness in the presence of the jury. We do not agree that these differences have any mitigating effect on the denial of a fair trial to appellant. In both cases, a sworn-in witness for the defense was effectively prevented from testi-

require a showing of prejudice). Finally, we note that the prosecutor's threats in this case were exacerbated by his comments before the jury on the threatened witness' failure to testify—a serious compounding of the error which we address later in the opinion. Under these circumstances, we reverse the conviction of appellant without regard to a showing of prejudice. *See United States v. Goodwin, supra,* 625 F.2d at 703 ("[T]he court must reverse without regard to prejudice."); *United States v. Hammond,* 598 F.2d 1008, 1013 (5th Cir.1979) ("[T]his type of due process violation is harmful per se.").[4]

It is not necessary for us to decide if the prosecutor's threat, assuming his version, was sufficiently improper taken alone to require reversal of the conviction. He compounded the improper conduct by commenting to the jury upon appellant's failure to call Gaspar Viera as a witness after he himself had threatened him if he became one.

In *United States v. Smith,* 436 F.2d 787 (5th Cir.), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971), we held that a prosecutor's reference to the failure of the defense to call certain witnesses was improper, but that a "prompt corrective instruction ensured that the jury would disregard" the remark. 436 F.2d at 791. *See also United States v. Miller,* 460 F.2d 582, 588 (10th Cir.1972) ("[T]imely and forceful intervention by the trial court negated prejudicial error."). In this case, though, the district court did not give a Smith-type curative instruction. Instead, the court overruled appellant's objection to the prosecutor's remarks, and allowed the government to continue to make references to and draw inferences from Mr. Viera's absence from the stand.[5] Such references were improper, and their prejudicial effects were never countered either by the court or by appellant's counsel, who had already closed his case. Therefore, those references combined with the prosecutor's threats require that we reverse appellant's conviction.

## CONCLUSION

We find that appellant's Sixth Amendment right to present witnesses in his be-

---

fying by the remarks of a judge or judicial officer.

The dissent also claims that the prosecutor in this case may have made his statements in good faith. We find no requirement in *Webb* that the judge must have acted in bad faith to bring about the result. The Supreme Court simply noted that the judge singled out one witness for a discussion of the dangers of perjury, just as the prosecutor in this case did, and that the judge's discussion implied that he expected that the witness might lie, just as the prosecutor's statements imply that he did not expect Gaspar Viera to tell the entire truth. *See* 409 U.S. at 97, 93 S.Ct. at 353.

4. Neither *United States v. Valenzuela-Bernal,* supra, *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that defendant denied his right to cross-examine a witness must show prejudice), nor *Darden v. Wainwright,* — U.S. —, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (holding that prosecutor's improper argument required reversal of conviction only with showing of prejudice), reversed or otherwise impaired the holding of *Webb v. Texas* that a sufficient showing of "substantial government interference with a defense witness' free and unhampered choice to testify may violate the due process rights of the defendant and require reversal of the defendant's conviction without regard to prejudice." *United States v. Binker,* 795 F.2d 1218, 1228 (5th Cir.1986).

We note that in *United States v. Weddell,* 800 F.2d 1404 (5th Cir.1986), the panel declined to apply a per se reversal rule in a case where the government interfered with a defense witness' choice to testify. Suffice it to say that the facts of this case correspond more closely with *Webb,* and also show an aggravating error on the part of the prosecutor, not present in *Weddell.*

5. The full text of the prosecutor's remarks concerning Gaspar Viera's failure to testify is as follows:

At the very beginning of this trial, do you remember who stood up in this courtroom? The father, Mr. Viera—
[Objection.]
[Overruled.]
Do you remember when the Court asked all of us to come in here and I told the Judge I don't have all of my witnesses. All of mine that were in the courtroom were sworn in because we have a duty to inform the Court of it. Do you know who stood right here next to his son and raised his right hand? Papa, Mr. Viera.
The Judge is going to tell you that a defendant hasn't any burden to come forward in the case. That is the law. The Government has the total burden. Dad was just out there having a drink. We never heard from dad, did we, but you did hear from Mr. King.

half was violated by improper threats made to appellant's father by the Assistant United States Attorney combined with improper references to the failure of the threatened witness to testify. The comments were aggravated by the lack of a curative instruction.

REVERSED.

ROBERT MADDEN HILL, Circuit Judge, dissenting:

I respectfully cannot join in the reversal of Anthony Viera's conviction, and, accordingly, I file this dissent.[1]

The majority decides to reverse Viera's conviction because it finds the prosecutor made a threat against a defense witness, and then, after this threat prevented the witness from testifying, the prosecutor improperly commented during his closing argument on the witness' failure to testify. The cornerstone of the majority's decision is its assumption that an improper and unconstitutional threat was made by the prosecutor. I can not join in this assumption for two reasons.

First, the initial decision of whether a prosecutor has made an improper threat against a witness such that it substantially and thus unconstitutionally interferes with the witness' choice to testify is best left in the first instance to the district court. *See United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir.1980); *United States v. Bates*, 600 F.2d 505, 511 (5th Cir.1979). *See also United States v. Little*, 753 F.2d 1420, 1439 (9th Cir.1984) ("Whether substantial government interference with defense witness occurred is factual determination to be made by the trial court."). *Cf. United States v. Nixon*, 777 F.2d 958, 972 & n. 22 (5th Cir.1985) (appeals court decided substantial interference question based on extensive testimony at trial on alleged government misconduct). In this case the district court never developed what was actually said by the prosecutor, the factual context in which the statement was made, the prosecutor's intentions in making the statement, the effect of the prosecutor's

actions upon the potential witness' choice to testify nor the effect on Viera's defense. Both in the district court and now on appeal, varying accounts of what occurred have been presented. Both sides submit affidavits that attest to two different versions of the prosecutor's conduct. At oral argument the government mentioned several facts not part of the present record that could bear on the issue of what was said, to whom it was said, and why it was said. In light of the serious nature of the alleged prosecutorial misconduct and the important effect a finding of actual misconduct has on the government's case and the defendant's liberty, I believe the best course would be to remand this case to the district court so the allegations can be fully developed and an initial evaluation of the issue can be made.

Second, despite the lack of factual development of the prosecutor's actual conduct, the majority chooses to adopt the prosecutor's appellate affidavit as a description of what occurred. The majority then goes on to classify the prosecutor's asserted "good faith warning" as a constitutional violation based upon *Webb v. Texas*, 409 U.S. 95, 98, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972). I disagree with this classification because the action described in the prosecutor's affidavit does not in my opinion rise to the same level of conduct disapproved of in *Webb*, and therefore I cannot equate the possible conduct in this case with that involved in *Webb*.

*Webb* involved a case in which the district court on its own initiative personally admonished the defense's only witness as he took the stand:

Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you.

If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get

---

contained in parts II and III of the opinion. In these parts I accordingly concur.

convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on the witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.

*Id.* at 96, 93 S.Ct. at 352. The Supreme Court held that this lengthy diatribe by the trial court "effectively drove the witness off the stand" and violated the due process clause. *Id.* at 98, 93 S.Ct. at 353.

Assuming that this is what occurred in this case, the prosecutor stated to defense counsel that "if the father was called as a witness and provided incriminating evidence against himself, or perjury [sic], that I would take the matter to the next setting [sic] Grand Jury, the following week, and present the matter to them for their consideration and that he could be indicted."

In comparison I cannot say, as the majority does, that these statements are so similar "that the facts of this case are on all fours with *Webb*." In *Webb* the threat was made by the judge directly to the witness in open court as the witness was taking the stand. The admonition also amounted to the judge's personal guarantee of a perjury indictment and imminent conviction. In this case the assistant United States attorney states that if perjury occurs he will present the matter to the grand jury. He made no personal guarantees on indictment or conviction. Another distinguishing factor from *Webb* is that the prosecutor's remarks were made to defense counsel rather than directly to the potential witness. The statement was also made outside the courtroom, and not in the presence

of the jury as in *Webb*. Furthermore, the court's statement in *Webb* leaves little doubt as to its intent to intimidate the potential witness while in this case the prosecutor claims he made the statement in good faith and in the context of communicating new information he had recently received about the father's involvement in his son's drug trafficking operation. Such differences it seems to me are worthy of recognition in any evaluation of whether prosecutorial unconstitutional conduct is present in this case.

Not all statements by prosecutors advising prospective witnesses about the penalties for perjury are unconstitutional. See *United States v. Binker*, 795 F.2d 1218, 1228–19 (5th Cir.1986); *see also United States v. Risken*, 788 F.2d 1361, 1370 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986); *United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir.1982). To rise to a constitutional violation the prosecutor's conduct must amount to an intentional threat that intimidates the witness into not testifying. Whether this case falls into the impermissible range of conduct I believe is still an open question that can be properly resolved only after the district court develops the relevant facts and makes its evaluation of what occurred. All I say at this point is that the prosecutor's characterization of his statement cannot in my opinion be equated to the misconduct involved in *Webb* so that the latter controls as a matter of law the former.

Since I do not believe at this point that the alleged prosecutorial threat can serve as a basis for reversal, I could join the majority only if I could say the jury argument by the prosecutor standing alone would support reversal. This I decline to do. I agree with the majority that the prosecutor's comment about Viera's father not testifying was uninvited, was not proper rebuttal argument, and therefore was improper. An improper jury argument by a prosecutor is grounds for reversal, however, only if "the prosecutor's argument taken as a whole in the context of the entire case, prejudicially affected substan-

tial rights of the defendant." *United States v. Nixon,* 777 F.2d 958, 972–73 (5th Cir.1985) (*quoting United States v. Corona,* 551 F.2d 1386, 1388 (5th Cir.1977)). In light of the substantial evidence of Viera's guilt, the singular yet improper comment by the prosecutor cannot be said to have substantially prejudiced Viera's case.[2]

For the above reasons[3] I must respectfully dissent from the majority's reversal of Viera's conviction at this point in time.

2. I express no opinion on the effect of the improper jury argument if it was determined that the prosecutor had actually threatened the witness to the point of substantially interfering with the witness' free choice to testify.

3. I also briefly note the apparent intra-circuit conflict on the issue of whether a defendant must show prejudice as a result of a prosecutor's misconduct in threatening a witness.

In a long line of cases we have held that once substantial governmental interference with a witness' choice to testify is established, the defendant gains a reversal without regard to prejudice. See *United States v. Binker,* 795 F.2d 1218, 1228 (5th Cir.1986); *United States v. Whittington,* 783 F.2d 1210, 1219 (5th Cir.1986); *United States v. Goodwin,* 625 F.2d 693, 703 (5th Cir. 1980); *United States v. Hammond,* 598 F.2d 1008, 1012–13 (5th Cir.) *relief modified on reh'g,* 605 F.2d 862 (5th Cir.1979).

In a recent opinion, *United States v. Weddell,* 800 F.2d 1404 (5th Cir.1986), we apparently altered course based upon a review of recent Supreme Court decisions. In *Weddell* we held that a defendant must show prejudice as a result of the loss of a witness' testimony because of government intimidation. We concluded that the harmless error rule applies in these prosecutorial misconduct situations.

This is a substantial conflict in authority and is a problem potentially raised in this case as the majority recognizes. *Supra* p. 504 note 4. But since I believe the case should be remanded to the district court so that it can be determined whether an unconstitutional threat was actually made, I reserve my opinion of which approach is best for another day when the matter is squarely presented.